## THE LAW OF NEGLIGENCE.

[Circuit Court of Summit County.]

THE NORTHERN OHIO TRACTION COMPANY v. WAITE L. DROWN.

Decided, September 30, 1905.

*Negligence—Liability for an Injury—Where Plaintiff was Guilty of Contributory Negligence—But Defendant might have Avoided the Accident—Evidence as to Speed of Traction Car—Charge of Court.*

1. An opinion as to the speed at which an electric car is being run is competent when expressed by. one who resides where he sees such cars in operation daily and often rides upon them, notwithstanding he has no experience in their operation. Such an opinion should be allowed to go to the jury for what it is worth.

2. It is not now the law of Ohio, if it ever was, that a railway company is liable for the injury of one was was guilty of contributory negligence, but whose peril was or might have been seen by the engineer or motorman in time to have prevented the accident.

3. Where the evidence, in a suit for damages for injury to a team and carriage which had been struck by a street car, goes to show that the team was being driven parallel with the track and in the same direction the cars run, and to avoid another team which stood in the way was compelled to turn upon the track, when it was struck by a car coming up behind and running very rapidly, it is not error to refuse to direct a verdict for the defendant on the ground of negligence by the driver of the team.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

Error to the court of common pleas.

On the 22d of October, 1902, at about 6:30 o'clock P. M., one Henry A. Hardy was driving a span of horses harnessed to a top buggy, all being the property of the defendant in error. The team was being driven to the south on Main street in the city of Akron. A car of the plaintiff in error was being run upon its tracks in the same direction from the north, the team being further south than the car. There was a loaded wagon standing on the west side of Main street with a span of horses attached to it and the team hitched to a post. In order to drive to the south on the west side, which would be the right-hand side in going to the south, and pass this team thus hitched

to the post, it would be necessary to turn so far to the east, or to the left, as that a buggy thus turning would be in the path of the car which was coming from the north. Not far from where this team was hitched on the west side of the street the car struck the turnout which was being driven by Hardy and damaged it. The owner of that turnout, Drown, sued the traction company and recovered a judgment which it is sought here to have reversed.

Many errors are complained of, and the first to which attention is called is an exception taken by plaintiff in error to a ruling on a question of evidence, found on page 26 of the bill of exceptions, when one Fred Zindel was testifying. Zindel said, being asked as to the speed of the car, that it was going about as fast as he ever saw a car go. It was asked to have that answer excluded. The court overruled the motion to exclude, but, if there was any error in that it was entirely cured, as shown by page 103 of the bill of exceptions, when Judge Anderson, who was trying this case for the plaintiff below, stated to the court that he had become somewhat doubtful as to whether he had a right to have that answer given by Zindel on page 26 remain, and he asked to have it taken from the jury. For some reason, counsel for the defendant below objected to its being taken from the jury, but the court left it with the jury because the defendant below insisted that the witness having once said it and the court having once ruled upon it, it could not now be taken from the jury.

Fred Hanselman was a witness introduced on the part of plaintiff below, and he was permitted to testify over the objection of the defendant that he thought the car was going at about twenty-five miles an hour. It is said that he had not qualified as one able to express an opinion on the subject. He had testified that he resided in Akron, that he often rode on street cars, that he saw them daily in their operation in the city, but he had never been engaged in operating street cars. We think there was no error in permitting that evidence to go to the jury. It would be very difficult to get at what kind of knowledge one must have as to the rapidity with which horses are driven, or street cars are moved, or automobiles go, if you have got to have

always a man who is so much of an expert that he has timed these various things. We think that opinion thus expressed was properly permitted to stand, the jury to weigh what it was worth. The same question is raised upon the testimony of other witnesses. Zindel saw a cloud of dust which he says was caused by the rapidity with which the street car was moving, and it is urged that it was error to allow that to go to the jury. We suppose that if one saw a span of horses being driven along the road and a great cloud of dust raised around the feet of those horses, that he might testify to that fact, and let the inference be whatever it might as to whether it was caused because the horses were stumblers or because they were going fast. There was no error in the admission of this evidence.

It was urged that at the close of the evidence introduced on the part of the plaintiff below the jury should have been directed, as the court was asked to do by motion, to return a verdict for the defendant, because it is said that the evidence introduced on behalf of the plaintiff below showed such negligence on the part of the agent of the plaintiff below who had charge of the team as to prevent a recovery. We think there was no error in refusing to take the case from the jury.

It is said when all the evidence was introduced and a verdict had been returned, that the motion for a new trial should have been sustained for the reason that all of the evidence taken together was such as did not sustain the verdict. We do not think that the evidence was such that, as a matter of law, the court could say the judgment is erroneous. We find no error in the overruling of the motion for a new trial on that ground.

The court was asked to give in charge to the jury certain propositions of law. Two of these requests were as follows:

"(3). If the jury find from the evidence that the plaintiff, through his agent, Hardy, and the defendant, were both negligent, and that the negligence of both directly contributed to cause the injury complained of in plaintiff's petition, then your verdict should be for the defendant, and

"(4). If the jury find that the negligence of both plaintiff's agent and the defendant combined so as to directly cause the injury complained of by plaintiff, then your verdict should be for the defendant."

Both of these were refused. They were refused upon the idea in the mind of the court that the plaintiff would not be precluded from a recovery, though he was negligent, if the defendant might, by the exercise of ordinary care, have known of the peril in which the plaintiff below was placed and might have prevented the injury. If that is the law, then the court was right in refusing those requests and was right in giving to the jury what is found in the charge on the same subject. The court might well suppose from some of the holdings, both of this court and of the Supreme Court, as we think, that he was entirely justified in refusing those requests and giving the charge given. In the case of *The Lake Shore & Michigan Southern R. R.* v. *August E. Schade, Administrator,* 15 C. C., 424, it is distinctly stated in an opinion by Judge Caldwell, speaking on behalf of this court, that if the engineer of a railroad train knew, or, by the exercise of ordinary care, might have known of the perilous position in which Schade, decedent, was placed and could have avoided the injury, although the party killed was negligent in getting into the position which he did, still the railroad company would be liable; and that case was affirmed without report by the Supreme Court in 57 O. S., 650. This court, believing that it might safely act upon the affirmance of that, held the same proposition in the case of *The Lake Shore & Michigan Southern R. R.* v. *Ehlert,* 19 C. C., 177, but the Supreme Court reversed that case, 63 O. S., 320. It seemed to us that the propositions were exactly the same, and we were left, as it seems to us, the bar of the state must have been in great doubt as to what the rule was in Ohio. But later there came the case of *The Erie Railroad Company* v. *McCormick,* 69 O. S., 45. In that case it is said by Judge Shauck, in his opinion at page 55—

"By introducing into the instruction given the phrase, 'if the engineer in charge of the train ought, by the exercise of ordinary care, to have seen the deceased in his perilous position,' and by other expressions in the charge involving the same question, the court gave to the jury an erroneous view of the law."

The McCormick case, as it will be remembered, went up from this court (3 C. C.—N. S., 652) and this court was reversed,

having sustained that charge. McCormick was not a trespasser, nor was Schade, nor was Ehlert. McCormick was an employe of the railroad company, and yet the court say because that language was used in the charge there was error. That being the last expression of the Supreme Court on the subject it seems to us that the court has distinctly held that the doctrine announced in the Schade case is no longer, if it ever was, the law in Ohio, and it will not do to say that one operating a railroad train, or a street car, is to be held liable for an injury resulting from negligence on the part of him who operates the train, or the car, providing the party injured is himself guilty of negligence and that negligence must not be attributed to the railroad company, or the operators of the electric car, because of the fact that they failed to see him when by the exercise of ordinary care they might have seen him in a perilous position in which the party injured had placed himself.

Understanding this to be now the settled law of Ohio, judgment must be reversed for error in refusing to give those two requests, and for giving what is found on page 165 of the record. The language used in the charge might not, as an abstract proposition of law, be objectionable because it is qualified by this language: and if he recklessly, wantonly, etc., ran down the party injured, but as there was no claim, and nothing could be claimed from the evidence, that there was any recklessness or wantonness, if the motorman didn't know the man was upon the track, then it had no application, and if it had any application at all it was calculated to mislead by giving the jury the idea that there was something of wantonness, which does not appear.

For the errors mentioned judgment will be reversed, and for no other.

*Rogers, Rowley & Bradley,* for plaintiff in error.

*A. J. Wilhelm* and *Geo. M. Anderson,* for defendant in error.